# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PROFICIENT BUSINESS SYSTEMS, INC., 2400 Meadowbrook Parkway Duluth, Georgia 30096<br><br>Plaintiff<br><br>-against-<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, 20 Massachusetts Ave NW, Washington DC 20529<br><br>Defendant | Case No.<br><br>COMPLAINT |

## INTRODUCTION

1. This is an action brought under the Administrative Procedure Act seeking to have the United States Citizenship and Immigration Services (USCIS)' decision denying Proficient Business Systems, Inc (Probys)'s petition in File Numbers WAC1919052757 and WAC1917250633 to classify Virali Banda and Deeptaj Martheneni, respectively, as specialty occupation workers and change Ms. Banda's status to "H-1B", Exhibits A and D, held unlawful and set aside.

2. As will be shown, these decisions were arbitrary and not in accordance with law.

3. The denial of the petition upon behalf of Virali Banda was not in accordance with law in that it relied upon a Federal court decision applicable only to 8 C.F.R. § 214.2(h)(4)(iii)(A)(3) to find that Probys had failed to establish that the job offered Ms. Banda was a specialty occupation under 8 C.F.R. § 214.2(h)(4)(iii)(A)(1), (2) & (4).

4. The denial of the petition upon behalf of Virali Banda was also arbitrary because the USCIS' conclusion that the Occupational Outlook Handbook (OOH) did not indicate the job offered her

1

required a baccalaureate degree in a specific specialty lacks a rational connection to the record showing that the OOH actually indicates that not only is such a degree a "common" (normal) requirement for the job of Systems Analyst, but in fact that the QA Analyst position offered Ms. Banda was an even more specialized form of systems analyst.

5. Finally, the denial of the petition was arbitrary because it completely ignored the expert opinion submitted by Probys showing that the job offered Ms. Banda met the criteria for a specialty occupation worker set forth in §§ 214.2(h)(4)(iii)(A)(2) & (4).

6. The denial of Probys's petition upon behalf of Deeptaj Martheneni was likewise arbitrary in that it disregarded Probys's expert's opinion that the position offered her qualified as a specialty occupation under § 214.2(h)(4)(iii)(A)(2) and provided reasons for rejecting the expert's opinion that the job qualified as a specialty occupation under § 214.2(h)(4)(iii)(A)(4) which were both contrary to published decisions of the Board of Immigration Appeals and arbitrary.

7. Accordingly, this Court should hold both decisions denying these petitions and change of status unlawful and set them aside. 5 U.S.C. § 706(2).

PLAINTIFF

8. Probys is a Delaware corporation founded in 1994 and doing business in Duluth, GA. The company, as of the time of the filing of these petitions, employed approximately 253 individuals and enjoyed gross and net revenues of $41 million and $4.09 million, respectively. The company is engaged in the business of recruiting and hiring highly qualified information technology professionals and placing them in sequential temporary assignments with end-client companies who need such workers. Exhibit B at 23.

9. In 2011, Probys was acquired by American Cyber Systems, Inc. ("ACS"), and became a wholly-owned subsidiary within the ACS group of companies ("ACS Group"). ACS Group, at the time of the filing of these petitions, employed over 13,501 employees in the U.S., with locations across the U.S. and in India. In 2018, the ACS Group generated gross revenues of $702 million. Id.

### DEFENDANT

10. The defendant, United States Citizenship and Immigration Services, is an agency of the United States government residing in the District of Columbia.

### JURISDICTION

11. This being a civil action against the United States arising under the Administrative Procedure Act, 5 U.S.C. § 701, *et. seq.,* a law of the United States, original jurisdiction over this matter is vested in this Court by 28 U.S.C. § 1331.

### BRIEF STATEMENT OF PROCEDURAL HISTORY
### AND LEGAL BACKGROUND

12. On April 11, 2019, Probys filed a Petition for a Nonimmigrant Worker (Form I-129), with U.S. Citizenship and Immigration Services (USCIS), seeking to classify Virali Banda as a temporary worker in a specialty occupation (H-1B) under section 101(a)(15)(H)(i)(b) of the Immigration and Nationality Act (INA). Exhibit A at 1.

13. This petition offered Ms. Banda the job of QA Analyst. Exhibit B at 23.

14. A QA Analyst is a specialized systems analyst. Bureau of Labor Statistics, U.S. Department of Labor, *Occupational Outlook Handbook*, Computer Systems Analyst, on the Internet at https://www.bls.gov/ooh/computer-and-information-technology/computer-systems-analysts.htm (visited *July 12, 2020*).

15. The Occupational Outlook Handbook (OOH) provides that a bachelor's degree in a computer or information science field is a common requirement for the position. Id.

16. Subsequently, in response to a request for further evidence, Probys submitted a number of additional documents, including an "Expert Opinion Letter" written by Raghu Korrapati, PhD, a professor in the applied management decisions program at Walden University with extensive experience researching, teaching and working in the Information Technology industry. Exhibit C at 121-158.

17. This letter included an 8 page analysis of how Virali Banda learned the skills needed to perform the offered position in her degree program. Id. at 128-134.

18. Upon the basis of that analysis, as well as Dr. Korrapati's education, research and experience pertaining to information technology, the letter concluded that the job offered Ms.Banda was a specialty occupation because the requirement of a baccalaureate degree in Computer Science, or its equivalent, or in another closely related field, is common to the Information Technology industry in parallel positions among organizations similar to Probys and that the job was so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree in such fields.

19. Following a request for evidence and a response, the USCIS issued a decision on February 4, 2020, denying Probys's said petition for two reasons.

20. The first reason was that assertedly Probys failed to "produce evidence that the proffered position qualifies as a specialty occupation on the basis of the requirements imposed by the entities using the beneficiary's services". Exhibit A at 7.

21. The second reason was that Probys had "not shown that the proffered position is a specialty occupation." Id. at 13.

22. The USCIS' decision did not so much as acknowledge that it had received Dr. Korrapatti's opinion.

23. Also on April 11, 2019, Probys filed another Form I-129 with USCIS, seeking to classify Deeptej Martheneni as an H-1B worker. Exhibit B at 1.

24. The position offered Ms. Martheneneni was that of Business Analyst. Exhibit E at 17.

25. Probys's petition was likewise supported by a "Expert Opinion Letter" written by Dr. Raghu Korrapati, which included an 8 page analysis of how Deeptej Martheneni learned the skills needed to perform the offered position in her baccalaureate degree program in Business Administration with a concentration in Marketing. Id. at 59-93.

26. Upon the basis of that analysis, as well as Dr. Korrapati's education, research and experience pertaining to information technology, the letter concluded that the job offered Ms. Martheneni was a specialty occupation because *t*he requirement of a baccalaureate degree in Business Administration with a Concentration in Marketing, or another closely related Business field discipline, is common to the Information Technology industry in parallel positions among organizations similar to Probys, and that the nature of the job duties was so specialized and complex that knowledge required to perform them is usually associated with the attainment of a baccalaureate or higher degree in such fields. Id.

27. Nevertheless, on August 28, 2019, the USCIS denied this petition because it found that Probys had failed to establish that the job offered to the beneficiary, Deeptej Martheneni, required a degree in a specific specialty.

28. The agency's decision failed to even acknowledge, much less respond to, Dr. Korrapati's opinion that the job offered Deeptej Martheneni was a specialty occupation because *t*he requirement of a baccalaureate degree in Business Administration with a Concentration in Marketing , or another closely related Business field discipline, is common to the Information Technology industry in parallel positions among organizations similar to Probys.

29. Nor did the decision make any reference to Dr. Korrapati's 8 page analysis showing that Ms. Martheneni had learned the skills needed to perform the job offered in her degree program.

30. The USCIS did however acknowledge Dr. Korrapati's opinion that the nature of the job duties was so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree in a specific specialty and rejected it because:

1. "The professor reached this conclusion by relying on your description of the position rather than any specific study of the position at your organization. There is no evidence that the professor knew any more about the specific duties of the position than what you provided.";
2. "the evaluation is not supported by copies or citations of research material";
3. "The professor has not provided sufficient facts that would support the contention that the proffered position requires at least a bachelor's degree or higher or its equivalent in a specific specialty."; and
4. "The evidence does not distinguish the difference between the duties to be performed by the beneficiary and those normally performed by similar workers, and how the duties of the proffered position are more specialized and complex."

31. On about September 27, 2019, Probys filed with USCIS a motion to reconsider its decision.

Exhibit G in the petition pertaining to Ms. Martheneni.

32. On December 11, 2019, the USCIS denied the motion. Exhibit H.

31. This action ensued.

CAUSE OF ACTION

I. THE USCIS' DECISION DENYING PROBYS'S PETITION UPON BEHALF OF VIRALI BANDA SHOULD BE HELD UNLAWFUL AND SET ASIDE BECAUSE IT WAS ARBITARY AND NOT IN ACCORDANCE WITH LAW

21. 5 U.S.C. § 706 provides in material part that: "To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an Agency action. The reviewing court shall--

…

(2) hold unlawful and set aside Agency action, findings, and conclusions found to be--

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

32. As will now be shown, this aptly describes the decision denying Probys's petition upon behalf of Ms. Banda.

A. THE DECISION DENYING PROBYS'S PETITION UPON BEHALF OF VERALI BANDA WAS NOT IN ACCORDANCE WITH LAW BECAUSE IT WAS DENIED UPON A GROUND WHICH WAS IRRELEVANT TO THE PETITION

33. The sole authority cited by the decision for its claim that Probys was required to produce evidence that the proffered position qualifies as a specialty occupation on the basis of the requirements imposed by entities using the beneficiary's services is *Defensor v. Meissner,* 201 F.3d 384 (5th Cir. 2000)**.** But not only is *Defensor* completely lacking in precedential value to a case with no connection to that circuit, but, in any event, it only construes the criterion for determining that a job is a specialty occupation set forth in 8 C.F.R. § 214.2(h)(4)(iii)(A)(3) and

7

has no relevance to the instant action, in which Probys maintains that the job qualifies as a specialty occupation under § 214.2(h)(4)(iii)(A)(1),(2) & (4) but not (3).

34. In *Defensor,* an H-1B petitioner claimed that the job offered of nurse qualified as a specialty occupation under 8 C.F.R. § 214.2(h)(4)(iii)(A)(3) because the petitioner required a bachelor's degree in nursing for the position. *Id.*, 201 F.3d at 387. Because the petitioner in *Defensor* (Vintage) could not prove that the hospital to which it contracted the beneficiaries' services required a bachelor's degree in nursing for that job, "it was not an abuse of discretion to interpret the statute and regulations so as to require Vintage to adduce evidence that the entities actually employing the nurses' services required the nurses to have degrees, which Vintage could not do." *Id.* at 388.

35. However, proving that a job is a specialty occupation by demonstrating that the petitioner required a specialized degree for it is only one of the four ways that one may establish that a job is a specialty occupation under 8 C.F.R. § 214.2(h)(4)(iii)(A).

36. All the court in *Defensor* held was that in determining what the employer's requirements were for the purpose of establishing that a job is a specialty occupation under § 214.2(h)(4)(iii)(A)(3), it was appropriate to take into consideration the end-client's requirements for the job as well.

37. This simply bears no relevance to the question of whether the job offered normally requires a specialized degree, § 214.2(h)(4)(iii)(A)(1) or whether such a degree requirement is common to the industry in parallel positions among similar organizations. § 214.2(h)(4)(iii)(A)(2). *See Stellar IT Sols., Inc. v. United States Citizenship & Immigration Servs.,* 2018 U.S. Dist. LEXIS 196284, *31, 2018 WL 6047413 (D.C.D.C.) ("More importantly, though, Stellar IT did not even need to

show that Honda[1] required a degree in a specific specialty in order to meet its burden on this issue. It was permitted to instead show that the "degree requirement [wa]s common to the industry in parallel positions among similar organizations." 8 C.F.R. § 214.2(h)(4)(iii)(A).").[2]

38. So too here Probys did not even need to show that Deloitte required a degree in a specific specialty in order to meet its burden on this issue. It was permitted to prove that the job qualified as a specialty occupation under any one of the four criteria established by § 214.2(h)(4)(iii)(A) to show that the job offered was a specialty occupation.

39. Probys relied upon the Occupational Outlook Handbook (OOH) to show that the job offered qualified as a specialty occupation under § 214.2(h)(4)(iii)(A)(1) by showing that the job offered normally required a specialized degree, Exhibit C at 117, on the opinion of Dr. Korrapati to show that the job offered was a specialty occupation under § 214.2(h)(4)(iii)(A)(2) because the specialized degree requirement is common to the industry in parallel positions among organizations similar to Probys, *Id*. at 138, and on § 214.2(h)(4)(iii)(A)(4) because the nature of the job duties are so specialized and complex as to require a bachelor's degree in a specific specialty to perform. Id at 136-137.

39. The mere fact that Probys did not satisfy the USCIS that it met the requirements for establishing that the job offered was a specialty occupation under section § 214.2(h)(4)(iii)(A)(3) was not a

---

[1] Honda, like Deloitte here, was the ultimate recipient of the beneficiary's services, or the "end-client". *Id.,* 2018 U.S. Dist. LEXIS 196284, *19.

[2] This is in fact the standard prescribed by § 214.2(h)(4)(iii)(A)(2). Nevertheless, the point remains that the even if Stellar IT (or Probys) was barred by *Defensor* from satisfying the requirement of § 214.2(h)(4)(iii)(A)(3), that is not relevant to the issue of whether the job qualifies as a specialty occupation under one of the other 3 criteria set forth in 8 C.F.R. § 214.2(h)(iii)(A).

basis for denial of this petition where, as here, Probys never even claimed that the job qualified as a specialty occupation based under § 214.2(h)(4)(iii)(A)(3), and, further, it maintained that the job offered qualified as a specialty occupation under §§ 214.2(h)(4)(iii)(A)(1),(2) & (4).

B.  THE USCIS' HOLDING THAT PROBYS FAILED TO ESTABLISH THAT THE JOB OF QA ANALYST NORMALLY REQUIRES A DEGREE IN A SPECIFIC SPECIALTY WAS ARBITRARY BECAUSE IT LACKED A RATIONAL CONNECTION TO THE RECORD, WHERE THE ONLY EVIDENCE IN THE RECORD SHOWS THAT A DEGREE IN A SPECIFIC SPECIALTY IS NORMALLY REQUIRED FOR THIS JOB

40. USCIS found that the job offered did not satisfy § 214.2(h)(iii)(A)(1) because "The OOH describes the educational and other qualifications for a Computer Systems Analyst, as follows:

> • A bachelor's degree in a computer or information science field is common, although not always a requirement.
> • Some firms hire analysts with business or liberal arts degrees who have skills in information technology or computer programming.

Exhibit A at 10.

41. Accordingly, USCIS reasoned that "As discussed in the OOH, a bachelor's level of training in a specific specialty is not required for the Computer Systems Analysts occupation. Many Computer Systems Analysts have liberal arts degrees and gained experience elsewhere. As a result, the proffered position cannot be considered to have met this criterion." Exhibit A at 10.

42. However, "common" is in fact synonymous with "normal". https://www.merriam-webster.com/thesaurus/normal.

43. Accordingly, the OOH actually establishes that the job offered Ms. Banda does normally require a bachelor's degree in computer science or information systems.

44. Therefore the job offered fully satisfies the requirement that "(a) baccalaureate or higher degree (in a specific specialty) or its equivalent is normally the minimum requirement for entry into the particular position;" and the USCIS' holding to the contrary is arbitrary in that it lacks a rational connection to the record. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 56 (1983).

C. THE USCIS' DECISION WAS ARBITRARY BECAUSE IT IGNORED THE OOH'S FINDING THAT THE JOB OF QA ANALYST WAS AN EVEN MORE SPECIALIZED FORM OF SYSTEMS ANALYST, AS WELL AS THE EXPERT'S OPINION THAT THE SPECIALIZED DEGREE REQUIREMENT IS COMMON TO THE INDUSTRY IN PARALLEL POSITIONS AMONG ORGANIZATIONS SIMILAR TO PROBYS AND THAT THE NATURE OF THE SPECIFIC DUTIES ARE SO SPECIALIZED AND COMPLEX THAT KNOWLEDGE REQUIRED TO PERFORM THE DUTIES IS USUALLY ASSOCIATED WITH THE ATTAINMENT OF A BACCALAUREATE OR HIGHER DEGREE IN A SPECIFIC SPECIALTY

45. Not only did the USCIS misinterpret the OOH's statement that a bachelor's degree in a computer related field is commonly required to be a systems analyst, but it entirely disregarded the fact that, per the OOH, a QA Analyst is a "specialized systems analyst".[3]

46. This was important evidence highly material to the agency's decision in that if a degree in a specific specialty is "common" even for the Systems Analyst occupation as a whole, certainly it is even more likely that a "specialized systems analyst" would require a specialized degree.

47. Further, the USCIS rejected the argument that the job offered qualified as a specialty occupation under § 214.2(h)(4)(iii)(A)(2) because, supposedly, Probys "did not submit

---

[3] Occupational Outlook Handbook > Computer and Information Technology > **Computer Systems Analysts > What they do.**
https://www.bls.gov/OOH/computer-and-information-technology/computer-systems-analysts.htm#tab-2 (last accessed July 5, 2020).

evidence to demonstrate that a degree in a specific field of study is common to the software service provider industry in parallel positions among similar organizations." Exhibit A at 8.

48. However, this conclusion was contradicted by the 22 page opinion of Raghu Korrapati, Ph.D. concluding, among other things, that the specialized degree requirement is common to the industry in parallel positions among organizations similar to Probys and that the nature of the specific duties are so specialized and complex that the knowledge required to perform them is usually associated with the attainment of a baccalaureate or higher degree. Id. at 136.

49. Neither the above referenced portion of the OOH nor Dr. Korrapati's opinion letter were as much as mentioned by the USCIS in its decision, much less actually considered.

50. "[A]n agency cannot ignore evidence contradicting its position." *Genuine Parts Co. v. EPA*, 890 F.3d 304, 312 (D.C. Cir. 2018) *quoting Butte Cty. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010)).

51. Accordingly, inasmuch as the agency ignored substantial evidence contradicting its position that Probys failed to prove that its job offered required a specialized degree, it's decision was arbitrary.

II. THE DECISION DENYING PROBYS'S PETITION UPON BEHALF OF DEEPTAJ MARRINENI WAS LIKEWISE ARBITRARY AND NOT IN ACCORDANCE WITH LAW BECAUSE THE AGENCY IGNORED PORTIONS OF THE EXPERT'S OPINION CONTRADICTING ITS POSITION ON § 214.2(h)(4)(iii)(A)(2) OF THAT REGULATION AND PROVIDED REASONS FOR REJECTING THE EXPERT'S OPINION ON § 214.2(h)(4)(iii)(A)(4) THAT WERE NOT IN ACCORDANCE WITH BIA PRECEDENTAND/OR UNREASONABLE

    A. THE USCIS' FAILURE TO CONSIDER DR. KORRAPATI'S EXPERT OPINION IN CONCLUDING THAT PROBYS FAILED TO ESTABLISH THAT THE JOB OFFER WAS A SPECIALTY OCCUPATION UNDER § 212.2(h)(4)(iii(A)(2) WAS ARBITRARY

52. The USCIS found that Probys failed to establish that the job offered qualified as a specialty occupation under § 214.2(h)(4)(iii)(A)(2) because (in material part) "you did not submit evidence to demonstrate that a degree in a specific field of study is common to your industry in parallel positions among similar organizations." Exhibit D at 4.

53. However, this disregarded the expert opinion of Dr. Korrapati, who asserted that a degree in a specific field of study is common to Probys's industry in parallel positions among similar organizations. Exhibit F at 72 & 76.

54. Again, for reasons stated above, it is arbitrary for the USCIS to ignore evidence contradicting its position.

    B. THE USCIS' REJECTION OF DR. KORRAPATI'S OPINION THAT THE NATURE OF THE SPECIFIC DUTIES OF THE POSITION OFFERED DEEPTAJ MARTHENENI WERE SO SPECIALIZED AND COMPLEX THAT KNOWLEDGE REQUIRED TO PERFORM THE DUTIES IS USUALLY ASSOCIATED WITH THE ATTAINMENT OF A BACCALAUREATE OR HIGHER DEGREE WAS NOT IN ACCORDANCE WITH LAW AND ARBITRARY.

55. Finally, regarding §214.2(h)(iii)(A)(4), Dr. Korrapati opined that the job offered satisfied that requirement because it was "sufficiently specialized and complex as to require a Bachelor degree, or the equivalent, in a field such as Business Administration with Concentration in Marketing, or another closely related Business field to perform the essential functions of the job itself". Exhibit F at 71. This time, the USCIS actually did consider Dr. Korrapati's opinion regarding this criterion, but rejected it for the following reasons:

    1) "The professor reached this conclusion by relying on your description of the position rather than any specific study of the position at your organization. There is no evidence that the professor knew any more about the specific duties of the position than what you provided.";
    2)"the evaluation is not supported by copies or citations of research material";

    3) "The professor has not provided sufficient facts that would support the contention that the proffered position requires at least a bachelor's degree or higher or its equivalent in a specific specialty."; and
    4) "The evidence does not distinguish the difference between the duties to be performed by the beneficiary and those normally performed by similar workers, and how the duties of the proffered position are more specialized and complex."

  Exhibit B at 5.

56. The first two of these reasons for rejecting the expert's opinion are not in accordance with law and the third and fourth are arbitrary.

57. The requirement that an expert base his opinion on personal knowledge rather that information received from the employer is not in accordance with BIA precedent. *See Matter of Casanova*, 26 I. & N. Dec. 494, 499 (B.I.A. March 11, 2015) ("an expert witness, …, is permitted to base her opinion on hearsay evidence and need not have personal knowledge of the facts underlying those opinions"; *Matter of D-R-*, 25 I&N Dec. 445, 459- 60 (BIA 2011) *(*"an expert witness, … is permitted to base her opinion on hearsay evidence and need not have personal knowledge of the facts underlying those opinions. … Also, an expert opinion may include reasonable inferences that the expert draws from the available facts and data").

58. The requirement that an expert's opinion must be supported by **copies or citations of research material is likewise contrary to published Board precedent. The BIA has held that a witness** "was clearly qualified to testify as an **expert** on military operations during the Bosnian War. (where he) worked for 7 years with the ICTY as a military analyst, specifically assisted in war crimes prosecutions, is a retired U.S. Army intelligence officer, and previously testified as an expert on the Srebrenica massacre before the ICTY at the Hague, the Bosnian War Crimes Court, and Federal courts in the United States" *Matter of D-R-*, 25 I&N Dec. at 459-60. The Board made no reference to copies or citations of research materials as a requirement of expert testimony.

59. The claim that Dr. Korrapati had "not provided sufficient facts that would support the contention that the proffered position requires at least a bachelor's degree or higher or its equivalent in a specific specialty" is arbitrary because it too disregards evidence contradicting the USCIS' position, that being the 8 pages of detailed analysis in his letter describing how the skills necessary to perform the offered position were learned by Ms. Martheneni in her degree program. Exhibit E at 62-70.

60. The holding that "the evidence does not distinguish the difference between the duties to be performed by the beneficiary and those normally performed by similar workers, and how the duties of the proffered position are more specialized and complex" is arbitrary in that there in fact is no reason why the duties performed by the beneficiary should be different than those normally performed by similar workers in order for the duties of the proffered position to be so specialized and complex as to be usually associated with the attainment of a baccalaureate or higher degree (in a specific specialty). To the contrary, if the nature of the duties to be performed by Ms. Marteneni were so specialized and complex that the knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree (in a specific specialty), then one would expect that the duties performed by similar workers would likewise be so specialized and complex as to require the knowledge associated with the attainment of such a degree, which, of course, is exactly what Dr. Korrapati maintains, inasmuch as he states elsewhere that a Bachelor's degree in a specific specialty is in fact the industry standard for this position.

61. Accordingly, there is certainly no rational reason why the beneficiary could not perform the same duties normally performed by similar workers and yet be performing duties which are so specialized and complex as to require a specialized degree. For example, it is (or at least should

be) self-evident that a nuclear physicist performs duties which are specialized and complex, regardless of whether his duties are different from those normally performed by other nuclear physicists or not.

62. In fact, the agency, by raising this objection, has actually conflated § 214.2(h)(4)(iii)(A)(4) with the second prong of § 214.2(h)(iii)(A)(2). To show that the job is a specialty occupation under the second prong of § 214.2(h)(iii)(A)(2), it must be shown that the duties of the position are so complex or unique as to require a specialized degree. Certainly if Dr. Korrapati were to opine that the beneficiary's duties were unique, he would necessarily be required to show that they were different from those performed by similarly employed workers. However, the word "unique" appears nowhere in Dr. Korrapati's opinion and although Probys argues that the position is so complex (and specialized) as to require a bachelor's degree in a specific specialty, nowhere does it claim that the position is uniqueAn agency," without having a reasonable basis, should not discredit or reject the expert testimony offered. *See Bunting v. Sec'y DHHS,* 931 F.2d 867, 873 (Fed. Cir. 1991)." *Frank v. Sec'y of the Health & Human Servs.*, 34 Fed. Cl. 29, 37 (1995).

63. The USCIS' rejection of the expert's opinion because he did not establish that the offered position was different from that performed by similarly employed workers was unreasonable when that was not a requirement of the criterion his opinion was submitted to show satisfaction of.

64. Therefore the USCIS' decision denying Probys's H-1B petitions under behalf of Deeptaj Martheneni was not in accordance with law and arbitrary

## COUNT III

SINCE THE DENIAL OF PROBYS'S PETITION UPON BEHALF OF MS. BANDA WAS NOT IN ACCORDANCE WITH LAW AND ARBITRARY, SO TOO WAS THE DENIAL OF HER CHANGE OF STATUS

65. The sole basis provided by the USCIS for denying the application to change Ms. Banda's status to H-1B was the denial of Probys's petition upon her behalf. Exhibit A at 1-2.

66. Inasmuch as that decision was not in accordance with law and arbitrary, so too was the denial of said application.

COUNT IV

THE USCIS HAS UNLAWFULLY DELAYED A LAWFUL DECISION ON PROBYS'S PETITIONS AND APPLICATIONS

67. 5 U.S.C. § 706 provides in relevant part that in actions under the Administrative Procedure Act "The reviewing court shall—

**(1)** compel agency action unlawfully withheld or unreasonably delayed;".

68. The USCIS has unlawfully withheld a decision on Probys's petition upon behalf of Ms. Banda and Martheneni, and upon the application to change Ms. Banda's nonimmigrant status, which is not arbitrary, capricious and/or in accordance with law

WHEREFORE this Court should hold unlawful and set aside the decisions of the USCIS denying Probys's petitions to classify Virali Banda and Deeptaj Martheneni as H-1B nonimmigrants and order USCIS to issue a decision which is neither arbitrary, capricious, an abuse of discretion, nor not in accordance with law, within 15 days of its Order holding unlawful and setting aside the decision in this matter.

Respectfully submitted this        day of July, 2020

*s/Michael E. Piston*
Michael E. Piston (MI 002)
Attorney for the Plaintiffs
225 Broadway, Ste 307
New York, NY 10007
646-845-9895